UNIT ED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

October 29, 2013

LETTER TO COUNSEL:

    RE:    *Donna M. Davenport v. Commissioner, Social Security Administration*;
            Civil No. SAG-13-739

Dear Counsel:

On March 9, 2013, the Plaintiff, Donna M. Davenport, petitioned this Court to review the Social Security Administration's final decision to deny her claims for Supplemental Security Income and Disability Insurance Benefits. (ECF No. 1). I have considered the parties' cross-motions for summary judgment. (ECF Nos. 14, 16). I find that no hearing is necessary. Local Rule 105.6 (D. Md. 2011). This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *see Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (superseded by statute on other grounds). Under that standard, I will grant the Commissioner's motion and deny Plaintiff's motion. This letter explains my rationale.

Ms. Davenport filed her claims for benefits on September 1, 2009, alleging disability beginning May 1, 2009.[1] (Tr. 159-67). Her claims were denied initially on February 24, 2010, and on reconsideration on July 30, 2010. (Tr. 49-53, 62-68). A hearing was held on January 31, 2012, before an Administrative Law Judge ("ALJ"). (Tr. 8-27). Following the hearing, on February 21, 2012, the ALJ determined that Ms. Davenport was not disabled during the relevant time frame. (Tr. 32-48). The Appeals Council denied Ms. Davenport's request for review (Tr. 1-6), so the ALJ's decision constitutes the final, reviewable decision of the agency.

The ALJ found that Ms. Davenport suffered from the severe impairments of: COPD, asthma, obstructive sleep apnea, bipolar, alcohol abuse, degenerative disc disease of the cervical spine, and GERD. (Tr. 37). Despite these impairments, the ALJ determined that Ms. Davenport retained the residual functional capacity ("RFC") to:

> perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except the claimant can never climb ladders, ropes, or scaffolds; can occasionally climb ramps and stairs; can occasionally balance, stoop, kneel, crouch, and crawl; must avoid concentrated exposure to cold, humidity, and lung irritants; can engage in simple, routine, repetitive tasks; can have no interaction with the public; and no high production quotas.

---

[1] Ms. Davenport's application for Disability Insurance Benefits alleged a disability onset date of April 28, 1999.

(Tr. 38-39). The ALJ determined that Ms. Davenport was not able to perform her past relevant work as a nurse's aide. (Tr. 41). However, after considering the testimony of a vocational expert ("VE"), the ALJ determined that Ms. Davenport was capable of performing other jobs existing in significant numbers in the national economy. (Tr. 42).

Ms. Davenport presents four primary arguments on appeal: (1) that the ALJ improperly formulated the RFC in respect to both her physical and mental impairments; (2) that the ALJ erred in assigning weight to the opinion of consultative examiner Dr. William Miller; (3) that the ALJ recited an improper hypothetical to the VE; and (4) that the ALJ erred in finding Ms. Davenport not credible.[2] Each argument lacks merit.

Ms. Davenport argues that the ALJ's RFC finding pertaining to both her physical and mental limitations was not supported by substantial evidence. She makes several sub-arguments in challenging the RFC determination. First, she argues the ALJ failed to consider evidence related to shoulder pain, sciatica, and congestive heart failure. (Pl. Mot. 4). However, an ALJ is not required to address every piece of evidence in the record, so long as a reviewing court can determine from the opinion "what the ALJ did and why [s]he did it." *Piney Mountain Coal Co. v. Mays,* 176 F.3d 753, 762 n.10 (4th Cir. 1999) (citing *Lane Hollow Coal Co. v. Dir., Office of Workers' Comp. Programs,* 137 F.3d 799, 803 (4th Cir.1998)); *see also Melgarejo v. Astrue,* No. JKS 08–3140, 2009 WL 5030706, at *4 (D. Md. Dec. 15, 2009) (all holding that an ALJ's duty to explain his findings and conclusions on all material issues of fact or law is satisfied when a reviewing court can determine, from an ALJ's opinion and the evidence of record, how he reached his conclusion). The ALJ did, in fact, consider treatment notes indicating that Ms. Davenport experienced difficulty lifting her shoulder during a July, 2010 hospital visit, (Tr. 40, 469), but that she showed "significant improvements" after physical therapy, and she was encouraged to control the shoulder pain with home exercise. (Tr. 40, 505). Moreover, in regards to her lower back pain, the ALJ discussed a September, 2011 CT scan that showed that Ms. Davenport had degenerative changes in the spine and mild degenerative changes in the hips. (Tr. 40, 628). The records Ms. Davenport cites in arguing that the ALJ failed to consider her sciatica show that her complaints of back pain were treated conservatively with medication and a referral to a pain management practice.[3] (Tr. 455-56, 484). Ms. Davenport also argues that the ALJ neglected to address her congestive heart failure diagnosis, and failed to account for the functional limitation Dr. Danai imposed in noting that she should "[p]rop up legs when possible." (Tr. 579). . However, at the hearing, the ALJ questioned whether Ms. Davenport had any objective medical evidence of congestive heart failure, or a formal diagnosis from Dr. Danai or another doctor. (Tr. 19). Ms. Davenport's counsel confirmed that there was no other evidence beyond Dr. Danai's "mention" of congestive heart failure. *Id.* I cannot find that the

---

[2] I have reordered some of Ms. Davenport's arguments for clarity.

[3] The Commissioner correctly notes that the pain management doctor observed that Ms. Davenport had "no loss of function" from her pain. (Tr. 468). In addition, Ms. Davenport cites to two Psychiatric Progress Notes to show she complained of sciatica and pain. (Tr. 558-59). I am unable to decipher a mention of either in the handwritten notes.

ALJ erred where the record lacks evidence of more severe functional limitations stemming from the physical impairments in question. In sum, I can trace the ALJ's logic: The RFC accounted for the moderate limitations caused by Ms. Davenport's lower back and shoulder pain, congestive heart failure, and other severe physical impairments by limiting her to never climbing ladders, ropes, and scaffolds, and only occasionally performing other postural activities.

Next, Ms. Davenport challenges the ALJ's analysis of her mental limitations. She makes two sub-arguments: (1) that the ALJ did not discuss all of the medical records pertaining to her agoraphobia and panic attacks, (Pl. Mot. 4, 8); and (2) that the ALJ did not properly analyze her activities of daily living (ADLs), (Pl. Mot. 8). The ALJ, in fact, discussed a number of records detailing treatment Ms. Davenport received for her anxiety and other psychiatric issues. (Tr. 40). The ALJ accurately observed that over a period of years, Ms. Davenport was consistently assessed as having a GAF scores in the 55 to 70 range,[4] and that "[o]verall, the record indicates moderate symptomology with a positive response to talk therapy and medical management." *Id.* The records Ms. Davenport cites do not contradict the ALJ's analysis. The ALJ noted that Ms. Davenport was hospitalized in July, 2010 after an adverse response to a change in her medications. (Tr. 38, 40). However, as the ALJ noted, at discharge, she was assessed with a GAF score of 55+. (Tr. 40, 467). The ALJ accounted for Ms. Davenport's anxiety and moderate social limitations in the RFC by limiting her to "simple, routine, repetitive tasks[,]" "no interaction with the public[,]" and working in an environment without high production quotas. (Tr. 39). Ms. Davenport does not argue that her agoraphobia and anxiety issues imposed more restrictive limitations than those found by the ALJ, and my review of her treatment records does not support imposing more restrictive limitations. For example, counselor John Brown noted that her "panic/agoraphobia [were] persistent[,]" but still gave Ms. Davenport GAF scores ranging from 55 to 65, indicating moderate symptoms.[5] (Tr. 635-51). I can find no reason for remand in the ALJ's mental RFC analysis. In regards to her ADLs, the ALJ relied far more on the psychiatric records than on ADL's to support the RFC. (Tr. 40). Ms. Davenport argues that the "ALJ did not set forth every symptom and limitation in every psychiatric diagnosis[,]" and did not consider all of her symptoms, but offers no evidence that she had more severe limitations than the mild restrictions found by the ALJ. *Id.* As discussed above, the ALJ does not have an obligation to discuss every symptom and every limitation, only those that are material to his or her decision. *See Melgarejo*, 2009 WL 5030706, at *4 (finding that "the ALJ is not required to discuss every piece of evidence in the record").

---

[4] It is well established that GAF scores are not determinative of disability. *See, e.g., Davis v. Astrue,* Case No. JKS-09-2545, 2010 WL 5237850, at *3 (D. Md. Dec. 15, 2010). However, nothing prohibits an ALJ from considering GAF scores as one component of a full analysis of the evidence of record. *See, e.g., Kozel v. Astrue,* No. JKS-10-2180, 2012 WL 2951554, at *10 (D. Md. July 18, 2012) ("[E]ven though a GAF score is not determinative of whether a person is disabled under SSA regulations, it may inform an ALJ's judgment.").

[5] Mr. Brown gave her a GAF score of 45 on one occasion when Ms. Davenport had two ailing family members living with her and had run out of money because of the associated extra expense. (Tr. 639).

Second, Ms. Davenport challenges the ALJ's assignment of "moderate weight" to Dr. Miller's opinion because he found that Ms. Davenport misrepresented her substance abuse issues. (Tr. 40-41). Ms. Davenport believes that because Dr. Miller recognized that her claims of sobriety were not true, the ALJ should not have discounted his opinion at all. As discussed below, the ALJ found Ms. Davenport not credible and cited at least three other reports of recent drinking beyond the one that Dr. Miller referenced. (Tr. 39-40). It is not clear which records Dr. Miller had access to, and it is within the ALJ's discretion to discount Dr. Miller's opinion if the ALJ believed Ms. Davenport was not candid during the psychological evaluation.

Third, Ms. Davenport argues the ALJ presented an improper hypothetical to the VE. First, she alleges that the hypothetical should have included the "symptoms of panic disorder and agoraphobia[.]" (Pl. Mot. 6). As discussed above, the ALJ properly included functional limitations in the RFC to account for Ms. Davenport's psychiatric problems. Ms. Davenport next avers that the hypothetical should have included the moderate limitations Dr. Shapiro checked off on the Mental Residual Functional Capacity Assessment form. (Tr. 16-17). Ms. Davenport is correct that Dr. Shapiro checked ten "moderate limitations" in Section I of the opinion, and that the ALJ did not include all ten limitations in her RFC. (Tr. 406-07). However, the relevant portion of Dr. Shapiro's opinion is not Section I, which sets forth a series of "check the box" rankings, but Section III, which provides a detailed narrative functional capacity assessment. *See* Program Operations Manual System DI 24510.060B (Mental Residual Functional Capacity Assessment). Because Section I does not include the requisite level of detail to inform the ALJ's opinion, an ALJ need not address each of the Section I limitations. *See, e.g., Andrews v. Astrue*, Civil No. SKG-09-3061, slip op. at *39 (D. Md. Oct. 25, 2011) (noting that "even if the ALJ had not explicitly addressed each of the mental function limitations appearing on Section I of the mental RFCA, he was not required to do so."). Section III of Dr. Shapiro's opinion comports with the ALJ's findings of moderate limitations in social functioning and concentration, persistence and pace. (Tr. 38, 408). There does seem to have been some confusion at the hearing between the VE and the ALJ. (Tr. 21-25). The VE indicated that Ms. Davenport was incapable of medium work with the limitations that he understood the ALJ imposed. (Tr. 24). The VE then responded with light work level positions that Ms. Davenport could perform taking into account all of her exertional and nonexertional limitations, including an inspector (222.687-042 and 521.687-094) and sealer (726.687-042). Because the VE testified that there existed a significant number of jobs in the local and national economies even at that more restrictive RFC, I find any error in the ALJ's reliance on the VE's testimony ultimately harmless. Remand is therefore unwarranted.

Finally, Ms. Davenport argues that the ALJ erred in finding her not credible. The Fourth Circuit has developed a two-part test for evaluating a claimant's subjective complaints, such as fatigue. *Chater*, 76 F.3d at 594. First, there must be objective medical evidence of a medical impairment reasonably likely to cause the symptoms alleged by the claimant. *Id.* After the claimant meets this threshold obligation, the ALJ must evaluate "the intensity and persistence of the claimant's [symptoms], and the extent to which it affects [his] ability to work." *Id.* at 595. The ALJ followed that process in this case. (Tr. 39-40). First, the ALJ found Ms. Davenport's credibility diminished because medical records refuted her testimony at the hearing regarding the

*Donna M. Davenport v. Commissioner, Social Security Administration*
Civil No. SAG-13-739
October 29, 2013
Page 5

length of her sobriety. (Tr. 14, 39-40, 232, 336, 404, 452). Next, the ALJ correctly noted that there was "no diagnostic evidence of shoulder pathology" in the record. (Tr. 40). Lastly, the ALJ observed that she was not compliant with her doctors' recommendations for managing her sleep impairments and COPD. *Id.* Therefore, I find that the ALJ's adverse credibility finding was supported by substantial evidence.[6]

      For the reasons set forth herein, Plaintiff's motion for summary judgment (ECF No. 14) will be DENIED and the Commissioner's motion for summary judgment (ECF No. 16) will be GRANTED. The Clerk is directed to CLOSE this case.

      Despite the informal nature of this letter, it should be flagged as an opinion. An implementing Order follows.

                                    Sincerely yours,

                                      /s/

                                    Stephanie A. Gallagher
                                    United States Magistrate Judge

---

[6] Ms. Davenport also argues that the ALJ should not have based his credibility finding on the lack of school records to support her contention that she was in special education classes because the records likely do not exist because of her age, and the ALJ had a duty to obtain the records. Because there was sufficient alternative evidence on which to discount Ms. Davenport's credibility, I find no reason for remand based on this aspect of the ALJ's discussion.